By the Court,
Robertson, Oh. J.
Hone of the testimony introduced before the referee on the trial in this case, either as to the entries made by the plaintiffs in their books, Lawrence’s statements to them as to the ownership of the stock in question, the notice of its sale, or even the fact of its sale, have the- slightest bearing on the defendant’s legal responsibility for the advance made by the plaintiffs. Although the latter might choose to abate their claim in this action by a certain sum, which the defendant did not claim, the reason why they did so, or the source from whence such sum arose, was immaterial upon such issue. It is doubtful even whether the explanation given in this action of the reason of such deduction, although accompanied by evidence, would be of any consequence in an action brought by the defendant for the value of such stock, either as being illegally appropriated by the plaintiffs, or as a subject of a cross claim. The whole of such evidence may, therefore, be entirely disregarded on determining such liability.
The first question that presents itself on the material evidence is, what- the nature of the cause of action is. The money advanced by the plaintiffs never went into the defendant’s possession, and the plaintiff Bulen could not remember to whom he advanced it, except that it was not to the defendant. He merely stated'that “ about seven thousand dollars was advanced ; ” c; the amount paid for the stock was about eighty-seven hundred dollars ; ” that sum “ went for the purpose of paying for the * stock upon which they had agreed to loan.” From this it does not appear very clear that such sum was paid by the plaintiffs to any one at the request of the defendant or even of any one for him. Hor is the evidence more distinct, whether the defendant ever owned the stock, or when it was bought and paid for, and by whom, and how ; and when, and by whom it was transferred to the plaintiffs. *445 Such facts, certainly, must be material in determining whether the plaintiffs are entitled to recover for money expended at the defendant’s request, or for a loan to him. Such nature of the cause of action will be found very material in applying the evidence so as to determine whether any cause of action is made out.
The plaintiff Bulen, the only witness examined as to the original transaction, testified that Lawrence wanted his firm 11 to lend ” the market value of a hundred shares of stock upon it, but nothing seems to have been said about paying it out. To this the plaintiff replied that he would “ lend ” on that stock, such market value, on an additional deposit of ten per cent on such value by the holder, “provided he were a responsible person,” but he does not appear to have made any other condition as to the person to whom the loan was to be made. Lawrence then informed him simply that the stock belonged to the defendant, which seems to have satisfied him, as he made the advance. Nothing seems to have been said about buying the stock. The defendant was talked of as already the holder ; the stock as belonging to him at the time of the application and the advance, as being a loan. According to the evidence, nothing passed authorizing the plaintiffs to buy and pay for the stock, taking it in their own names as security for the sum advanced, and holding any one liable for a deficiency in case of its fall in value. There is a singular lack of evidence in showing what was done by the plaintiffs, even after such conversation with Lawrence, except that they paid a certain sum to some unknown person, and received the certificates of stock from a person equally unknown. The defendant, Who is alleged to have been the borrower, advanced $1000 to the plaintiffs, the supposed lenders, by his check, before they had advanced any thing, and this it is said was as security for a loan not yet made. The account which the plaintiffs presented, says nothing of a loan to the defendant, or advance for him of any money. It is headed- “ Milwaukee ac.” and the first item in it is a charge of a certain sum, ($8712.50,) being the advance now claimed for the stock in question, with *446 a commission of one eighth per cent, which would have made a loan of money usurious. Twice in it such stock is said to be “ on hand,” and it resembles in every respect more a bill rendered for stock sold to, or bought on account of the defendant, than a claim for money advanced. Even the subsequent written notice of the sale of such stock, neither requires the payment of money, nor points out any mode by which such sale can be prevented, and only speaks of it as “held on account of” the defendant. In the conversation in July, the plaintiff only demanded the amount mentioned in his account, and talked only of “ taking up the stock,” saying nothing about either a loan or advance of money. He subsequently spoke of the money paid by the defendant as being “ an additional deposit for a loan.” The leaning of the evidence is undoubtedly decidedly in favor of the transaction having been, if any thing, a mere loan on the credit of the stock and the deposit, and not an expenditure on the request and responsibility of the defendant. A loan generally on the stock was all that was applied for, and the plaintiffs offered to make it, if ten per cent of the market value of the stock was paid to them, so as, in fact, to reduce the loan to nine tenths of the value, provided the owner was a responsible person. Nothing was said as to the person to whom the loan was considered, made, or as to any person’s becoming responsible. It was not until three months after such transaction, and after the stock had fallen below the advance, that the defendant was thought of as being the borrower, and it was for the first time deemed necessary to secure evidence of his liability by admissions in the presence of a witness brought for the purpose. Although the plaintiff Bulen had twice previously called on the defendant in relation to a settlement, he does not appear to have pressed his claim against the defendant, or to have secured any necessary admission. The probability, therefore, is very great that such loan was made solely on the security of the stock itself, and not on any individual responsibility. No evidence was produced by Lawrence to the plaintiffs, nor was he asked for it, that he was the agent of the defendant in pro *447 curing the loan, unless the possession of the check of the latter be so considered. But that was for considerably more than the ten per cent required. There is no evidence when or by whom it was filled up with the names of the plaintiffs. At all events it seems to have been forthwith delivered, before the defendant had any notice of a demand of ten per cent in advance. . Its immediate delivery, and its excess beyond the amount required by the plaintiffs, ought to have wakened some suspicions as to the defendant’s intention to become personally liable, if they intended to look to him, and consequently of Lawrence’s authority.
Assuming, however, that the personal liability of some one was looked to, what was the evidence that the defendant made himself so P It is said Lawrence was his agent for the purpose. If so, what was the evidence of his authority ? There is no direct evidence either of the conferring of such authority expressly, or of any other authority involving its exercise. The admission, even, of the agency of, and authority to, Lawrence to buy the stock for the defendant, would not include, an admission of authority to borrow money to pay for it on .the responsibility of the principal, and yet it will he found that any liability of the defendant rests on such an admission alone. The interviews, at which such admission is supposed to have been made, took place between the defendant and the plaintiff Bulen, in the presence of a witness brought by the latter, (Carroll,) to overhear the conversation and note the defendant’s admissions, and within twenty feet of where Lawrence was standing, if not within his hearing. No appeal appears to have been made t^him during the conversation which then ensued, and, as Ca^flE testified, the defendant was on Ms guard. Under such circumstances the admissions made were, as might be expected, vague, and the evidence as to them conflicting. The first thing done was that the defendant declined to settle the account presented. To a question then put by such plaintiff, according to the testimony of the latter, “ whether Lawrence did not buy stock for the defendant on joint account,” and, according to the testimony of his witness *448 Carroll, whether they “had not stock transactions together,” the defendant answered in the affirmative. This was followed up by the plaintiff’s asking, according to his testimony, whether, if there had been a profit, the defendant “ would not participate” in it, and, according to that of Carroll, whether, in such case, “ he did not expect a portion ” of such profit, and the defendant a part. According to Carroll’s testimony alone, and not that of the plaintiff, the latter put the direct question to the defendant, “ whether Lawrence did not act as his agent in the purchase of such stock ?” and the defendant, in answer, said “ he did.” Whereupon the plaintiffs, after stating “ that they had received the stock on the defendant’s check and Lawrence’s representations, addressed this argument to him, that,, if he expected to receive a portion of the profits, he did not see how he “ could honorably refuse to receive the stock and settle the accountto which the defendant made no answer, except to decline to take the stock.
If the defendant, although on his guard, and having just declared his knowing about such stock, made the admission in such conversation (which even the plaintiff Bulen did not recollect) of Lawrence being his agent in the purchase of it, it seems not a little singular that the plaintiff .should have made an appeal, rather to the sense of honor of the defendant, of whom he knew but little, than to his sense of honesty, and to have rested it rather on a participation in'profits, than on a contract authorized by him. The plaintiff evidently understood .such admission of authority to purchase as not amounting to one of authority to borrow the purchase money, so as to make the defendant legally liable. Even if such an admission, so obtained, were at all reliable, (1 (Grlfc Ev. 200, n. 2, and cases cited,) it was not sufficient to x^M the defendant liable. An authority simply to buy stock adlnever entitle the agent to make the principal responsible ror the value of the article to any one but the seller or himself.
There was no corroboration of even the supposed- admission that Lawrence was the defendant’s agent in buying the stock. It was not proved that it ever stood in the name of the latter, *449 or was in his possession, or that he had any other interest in it, except in its profits, which he explains to mean payment of a debt due by Lawrence to him. And there were circumstances of suspicion tending to throw doubt upon the fact that such admission was ever made. Indeed the referee, as well as the plaintiffs’ counsel, seem, from questions put, to have supposed that an omission to deny the agency of Lawrence was available to prove it, even if there was no testimony of a positive admission. No appeal was made to Lawrence, although standing close by, in the interview with the defendant, when the latter denied all knowledge of the stock, and no demand was made of him.
Upon the merits, I think the judgment should he reversed, with costs to abide the event, and the order of reference discharged.